**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-01627-CMA-STV

LIVE FACE ON WEB, LLC, a Pennsylvania company,

     Plaintiff,

v.

INTEGRITY SOLUTIONS GROUP, INC.,

     Defendant.

---

**ORDER ON POST TRIAL MOTIONS ## 222, 225, 284, 285, 295**

---

     This matter is before the Court on six post-trial motions, three filed by Defendant Integrity Solutions Group, Inc.—(1) Renewed Motion Under Fed. R. Civ. P. 50(b) to Set Aside or Vacate the Judgment (Doc. # 284), (2) Motion Under Fed. R. Civ. P. 59 for a New Trial or for Remittitur (Doc. # 285), and (3) Motion for Protective Order (Doc. # 295)—and two filed by Plaintiff Live Face On Web, LLC—(4) Motion for Prejudgment Interest (Doc. # 222) and Plaintiff's Motion for Fees and Full Costs (Doc. # 225). The Court addresses each motion in turn.

## I.     PROCEDURAL BACKGROUND

     Plaintiff Live Face on Web, LLC ("LFOW" or "Plaintiff"), develops and licenses computer software that allows websites to display a video of a walking, talking spokesperson ("Virtual Greeter Video"). At issue in this case was Version 7.0.0 of LFOW's software ("LFOW Code"), which is computer code producing the Virtual Greeter

Video on webpages when persons visit a website that uses the LFOW Code. Plaintiff asserted that its registered copyright # TXu001610441 protects the LFOW Code.

Defendant Integrity Solutions Group, Inc. ("Integrity" or "Defendant") is a Colorado corporation that develops private document sharing sites for use in construction projects. It maintains a website at programnetinc.com and uses a web developer, Speaking Analytics, Inc./10 Pound Gorilla to develop and manage its website. The web developer recommended that Defendant purchase a virtual greeter video to display in its website from another company, Tweople/Yakking Heads. Tweople/Yakking Heads created the video and gave the web developer software that enabled the virtual greeter video to appear on Integrity's website. Defendant asserts that it paid Tweople $159.00 for these services. Defendant's web developer implemented Tweople/Yakking Heads' software on Integrity's website.

On June 24, 2016, Plaintiff initiated this action and asserted one claim of copyright infringement under 17 U.S.C. § 501 against Defendant, alleging that Defendant used and distributed an infringing version of its LFOW Code that is protected by a copyright. (Doc. # 1.) It sought to recover actual damages, any profits of Integrity, and attorneys' fees and costs. (*Id.* at 52–54.)

Throughout this litigation, Integrity has denied infringement and asserted that Plaintiff did not have a valid copyright for the LFOW Code, that Plaintiff cannot demonstrate infringement, that Plaintiff cannot prove it suffered damages, and that Plaintiff cannot recover Integrity's profits as damages.

The Court held a five-day jury trial on October 1–5, 2018. (Doc. ## 199, 201, 202, 209, 210.) At the close of Plaintiff's case, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which the Court denied. (Doc. # 202.) On October 5, 2018, the Jury returned a verdict in favor of Plaintiff on its copyright infringement claim, awarding Plaintiff $262,197.00 for the copyright infringement claim. (Doc. ## 215, 216.)

On October 5, 2018, the Court entered final judgment in favor of Plaintiff and against Defendant (Doc. # 217), and on October 19, 2018, the Clerk of the Court taxed Defendant with $8,763.75 in costs (Doc. # 226).

## II.    DEFENDANT'S RENEWED MOTION UNDER FED. R. CIV. P. 50(b)

The Court first addresses Defendant's Renewed Motion Under Fed. R. Civ. P. 50(b) (Doc. # 284), filed on November 9, 2018, and fully briefed by December 7, 2019. Therein, Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's copyright infringement claim because Plaintiff: (1) failed to introduce evidence of copying; (2) failed to introduce evidence of distribution; and (3) failed to prove damages based on Defendant's actual use of LFOW Code. (*Id.*) For the following reasons, none of these arguments entitle Defendant to judgment as a matter of law.

## A.    LEGAL STANDARD

Under Rule 50(b), a party may make a renewed motion for judgment as a matter of law within 28 days of the entry of judgment. *See* Fed. R. Civ. Proc. 50(b). In evaluating a motion brought under Rule 50(b), the Court examines all the evidence admitted at trial, construes that evidence and the inferences from it in the light most

favorable to the non-moving party, and refrains from making its own credibility determinations, re-weighing the evidence, or substituting its conclusions for those of the jury. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000); *see also Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997) ("The jury ... has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.").

Instead, the Court has the narrow task of determining only whether the jury verdict is supported by substantial evidence when the record is viewed most favorably to the prevailing party. *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002). Substantial evidence is "something less than the weight of the evidence, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.* Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

To preserve issues under Rule 50(b), a party must have moved for judgment as a matter of law under Rule 50(a) at trial. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000). Motions under Rule 50(a) must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). A party may not circumvent Rule 50(a) by raising for

the first time in a post-trial motion issues not raised in an earlier motion for directed verdict. *United Int'l Holdings*, 210 F.3d at 1228.

## B.    EVIDENCE OF COPYING

Defendant first argues that the judgment should be vacated because Plaintiff presented no evidence of direct infringement and, in particular, no evidence that Defendant itself copied the LFOW Code. (Doc. # 284 at 2.) Defendant contends that the evidence showed only that Integrity owner Michael Kirschbaum "received a link to download the alleged infringing files," that he never "clicked on the link or downloaded the files[,]" and that he merely "forwarded the link to his outside web developer 10 Pound Gorilla." (*Id.* at 6–7.) According to Defendant, as a matter of law, Mr. Kirschbaum's conduct did not constitute "copying" sufficient to establish Plaintiff's infringement claim. (*Id.* at 3.)

Plaintiff responds that evidence showing "actual copying" by Integrity was not legally required to establish its copyright infringement claim. (Doc. # 299 at 4–5.) Plaintiff contends that it satisfied the copying element of its copyright infringement claim by submitting evidence that Defendant had access to the LFOW Code and there were substantial similarities between Defendant's work and the original elements of the LFOW Code. (*Id.* at 5.) Plaintiff also directs the Court's attention to evidence showing that Defendant directed its web design consultant to assist in copying the LFOW Code, which also establishes the copying element. (*Id.* at 6–7.)

Defendant replied that Plaintiff was required to furnish evidence of Integrity's direct copying of the LFOW Code to permit a reasonable jury to find that Plaintiff proved

the copying element. (Doc. # 313 at 3–5.) Additionally, Defendant avers that the evidence adduced at trial was a misplaced attempt to prove vicarious infringement as opposed to Plaintiff's copyright infringement claim. (*Id.* at 2, 5.)

For purposes of resolving Defendant's renewed Rule 50(b) Motion, the first element of Plaintiff's copyright infringement claim is not in dispute. Defendant's first argument addresses the second element of Plaintiff's copyright infringement claim—that is whether Defendant copied original expression from Plaintiff's copyrighted work. With respect to this element, the jury was instructed as follows:

> Plaintiff may show that Defendant copied its work by proving by a preponderance of the evidence that (a) Defendant had access to its copyrighted work, **and** (b) there was substantial similarities between Defendant's work and original elements of Plaintiff's work. You may find Defendant had access to Plaintiff's work if Defendant **or whoever created Defendant's work for Defendant** had a reasonable opportunity to view, read, or copy Plaintiff's work before Defendant's work was created. There is no bright line rule as to what amount of similarity is permitted before it is substantially similar. If, however, the similarity is only as to nonessential matters and is quantitatively small, then a finding of no substantial similarity should result. This is referred to as *de minimis* similarity.

(Doc. # 211 at 15 (first emphasis in original) (second emphasis added).) Regarding the copying element, Defendant argues only that, because Integrity did not have access to the LFOW Code, it cannot be liable for direct infringement regardless of whether YakkingHeads or 10 Pound Gorilla had access to the LFOW Code.

The Court finds that, viewing the record in the light most favorable to the prevailing party, substantial evidence supports Plaintiff's position and the jury's verdict. *Webco Indus., Inc.*, 278 F.3d at 1128. With respect to access, at trial, Defendant's CEO Mr. Kirschbaum testified that Defendant ordered a third-party company, 10 Pound Gorilla, to develop Defendant's website. (Doc. # 300-4 at 3.) As part of that development,

Mr. Kirschbaum admitted that Defendant hired 10 Pound Gorilla to incorporate a "virtual spokesperson technology" or "talker overlay" (virtual greeter video) in Defendant's website. (*Id.* at 6–7.) Indeed, Defendant purchased that virtual greeter video software from YakkingHeads, provided the software to 10 Pound Gorilla, and told 10 Pound Gorilla to install the software on Defendant's website so that the virtual greeter video would "play" on the Integrity website. (*Id.* at 7.)

Additionally, the jury heard testimony from Plaintiff's owner and CEO Mr. Shcherbakov, who authored the LFOW Code at dispute. (Doc. # 300-1 at 3–24.) Mr. Shcherbakov testified that when YakkingHeads signed up as an affiliate for LFOW, YakkingHeads gained access to the LFOW Code, and as a result, its Virtual Greeter Video. (Doc. # 300-2 at 14.) In fact, Mr. Shcherbakov located a near-identical copy of the LFOW Code on YakkingHeads' server from 2013. (*Id.* at 14–15.) The LFOW Code from the Yakking Heads' server was also within the source code that operated the Virtual Greeter Video playing on Defendant's website. *See* (*id.* at 3–5.) Drawing all reasonable inferences in favor of Plaintiff from this testimony, the Court finds that there was sufficient evidence to support finding that Defendant **or whoever created Defendant's work for Defendant**, i.e., 10 Pound Gorilla, had access to the LFOW Code through its dealings with YakkingHeads and 10 Pound Gorilla.

Because this evidence is sufficient to support the jury's verdict as to the copying element, the Court denies Defendant's request for judgment as a matter of law on

Plaintiff's direct infringement claim.[1]

## C.   EVIDENCE OF DISTRIBUTION

Next, Defendant argues that, because Plaintiff failed to offer any evidence of Defendant's "volitional conduct" or that Defendant intentionally distributed the LFOW Code, there was no sufficient evidence upon which the jury could have found that Plaintiff established its direct infringement claim. (Doc. # 284 at 4–6.) Simply put, Defendant belatedly contends that, for Plaintiff to establish its direct infringement claim, it must "demonstrate volitional conduct" as an "element of direct liability." (*Id.* at 8–10.) Plaintiff asserts that Defendant "agreed to the Court's jury instructions that do not require a separate finding of volition," rendering Defendant's argument "moot and untimely." (Doc. # 299 at 8.) The Court agrees.

As a preliminary matter, the Jury was neither instructed that Plaintiff "must demonstrate volitional conduct to prove liability for distribution" nor that volitional conduct or distribution were requisite elements of Plaintiff's direct infringement claim. (Doc. # 211 at 15.) Defendant's distribution argument, thus, has no relevance as to whether the jury verdict is supported by substantial evidence.

Moreover, Defendant's reliance on non-binding case law is misplaced and, as a result, Plaintiff was not required to prove "volitional conduct" was part of its direct infringement claim. In support of its argument, Defendant cites two circuit court

---

[1] The Court notes that Defendant did not challenge the second component of "copying" in its Rule 50(b) Motion—that is whether "there [were] substantial similarities between Defendant's work and original elements of Plaintiff's work." (Doc. # 211 at 15.) As such, the Court does not address this component of the copying element.

decisions and a District of Kansas opinion for the proposition that Plaintiff "must demonstrate volitional conduct to prove liability for distribution." (Doc. # 284 at 8 (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2017); *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *19 (D. Kan. Dec. 9, 2015)).) However, these cases are distinguishable from the instant case because they involve internet or cable service providers with a platform which customers and users utilize to infringe on copyrighted material. Unlike "most copyright disputes" where the "allegedly infringing act and the identity of the infringer are never in doubt," those cases turn on whether defendant can be liable for direct infringement through their customers' conduct. *Cartoon Network LP*, 536 F.3d at 130.

To illustrate, in the Second Circuit's *Cartoon Network* decision, the court addressed whether a cable provider that furnished customers with access to a digital video recorder ("DVR") could be directly liable for unauthorized copying and distribution committed by customers who used the DVR to illegally copy and distribute copyrighted TV programming. *Id.* at 130–32. In these types of cases, "the core of the dispute" is over the authorship of the infringing conduct." *Id.* at 124–26, 131. With respect to cases in which a "defendant's system is merely used to create a copy by a third party," "there should still be some element of volition or causation" even though the Copyright Act is a strict liability statute. *Id.* at 130 (citing *Religious Tech. Ctr. v. Netcom On-Line Comm. Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995)). The Second Circuit's comparison of the cable company's provision of DVR to a copy machine is instructive. *Id.* at 132. "[B]y

selling access to a system that automatically produces copies on command, [the cable provider] more closely resembles a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers." *Id.* at 132. As such, the Second Circuit recognizes that, for these cases, "volitional conduct" is an important element of direct liability. *Id.* at 131–32.[2]

The instant case did not involve the core question of who was responsible for the infringing conduct. Additionally, Defendant is neither an internet nor cable service provider that promoted a platform or service that permitted third party users or customers to use such a platform or service to engage in the infringing conduct. Instead, as previously discussed, the evidence showed that Defendant hired 10 Pound Gorilla, who had access to the infringing software, to install the infringing software on Defendant's website. Therefore, because the cases cited by Defendant are neither binding on this Court nor analogous to the instant action, the Court did not err in

---

[2] None of the other cases cited by Defendant support the proposition that the Court should have instructed the jury that Plaintiff was required to prove "volitional conduct" in the instant case. In *Perfect 10, Inc.*, the Ninth Circuit held that Google did not violate the plaintiff's distribution rights over copyrighted images where Google's search engine, upon commands inputted by users, retrieved thumbnail versions of infringing images, and when users clicked on the thumbnail images, users were directed to third party infringer's websites that hosted the infringing software. 508 F.3d at 1155–57, 1162. Moreover, the *Tomelleri* court addressed whether plaintiff presented a plausible claim for direct infringement under Rule 12(b)(6) where defendant operated a website that permitted third party users to "create, buy, and sell customized merchandise online" by uploading "images" that were incorporated into the merchandise that defendant made and sold. 2015 WL 8375083, at *3–14, 17–18. The parties disputed whether Plaintiff was required to plead "volitional conduct" as to an element of his direct infringement claim. *Id.* at *17. However, the court concluded only that plaintiff's allegations were sufficient "to allege a claim for direct copyright infringement—with or without the volitional conduct requirement." *Id.* at *18. The court also recognized that neither the Tenth Circuit nor the Supreme Court had addressed the issue. *Id.* at *17.

omitting "volitional conduct" as an element in the direct infringement jury instruction.

Accordingly, the Court finds Defendant's distribution argument unavailing and denies Defendant's request for judgment as a matter of law.

## D.    EVIDENCE OF DAMAGES

Finally, Defendant argues that the judgment should be vacated because Plaintiff failed to prove damages based on Defendant's "actual use of the LFOW Code" in accordance with the Court's jury instructions. (Doc. # 284 at 10–11); (Doc. # 211 at 18.) However, as Plaintiff correctly points out in its Response (Doc. # 299 at 11), Defendant failed to raise this issue in its Rule 50(a) Motion. (Doc. # 329 at 7.) Indeed, the words "actual use" were never uttered during Defendant's Rule 50(a) Motion. Although Defendant raised the issue of whether Plaintiff sufficiently proved it was entitled to "profits" attributable to Defendant's infringement, the law to which Defendant cites in its Renewed Rule 50(b) Motion relates to Jury Instruction No. 16 as opposed to Jury Instruction No. 17—the law governing Defendant's profits argument set forth during its Rule 50(a) Motion. (*Id.* at 7 at 1); (Doc. # 211 at 19.) Because Defendant failed to preserve its "actual use" damages argument during its Rule 50(a) Motion, Defendant's belated attempt to now raise the issue is legally improper. *United Int'l Holdings, Inc.*, 210 F.3d at 1228; Fed. R. Civ. P. 50(a)(2), 50(b). Accordingly, the Court declines to consider Defendant's "actual cost" argument in ruling upon the instant Motion.

Therefore, Defendant's Renewed Motion Under Fed. R. Civ. P. 50(b) (Doc. # 284) is DENIED.

### III.      DEFENDANT'S MOTION FOR NEW TRIAL

The Court next addresses Defendant's Motion under Fed. R. Civ. P. 59 for a New Trial, or for Remittitur (Doc. # 285) in which Defendant argues that it is entitled to a new trial because (1) the Court excluded Defendant's technical expert Nancy Miracle's demonstrative exhibit "showing code that LFOW copied from the internet[;]" (2) the Court improperly excluded evidence of Plaintiff's patent application; and (3) the Court erroneously admitted internet archive printouts. (*Id.* at 2, 5.) Moreover, Defendant argues that the Court should exercise remittitur to reduce the damages award from $262,197.00 to $259.00 because Plaintiff offered insufficient evidence of "actual use" to support the damages award. (*Id.* at 7–10.)

### A.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(a)(1)(A), the Court may, "on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial heretofore been granted in an action at law in federal court." A motion for a new trial "is not regarded with favor and should only be granted with great caution[,]"*United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991), and "to correct manifest errors of law or to present newly discovered evidence[,]" *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). The decision whether to grant a new trial is committed to the sound and broad discretion of the trial court. *Kelley*, 929 F.2d at 586; *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990). The trial court judge "has the obligation or duty to ensure that justice is done, and, when justice so requires, [the judge] has the authority to set aside the jury's verdict."

*McHargue*, 912 F.2d at 936.

To "secure a new trial based on an allegedly improper evidentiary ruling, the movant must show that the court's evidentiary rulings were clearly erroneous and that they were prejudicial such that 'it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *Jackson v. Potter*, 587 F. Supp. 2d 1179, 1182 (D. Colo. 2008) (quoting *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)). Even then, an erroneous evidentiary ruling cannot be "grounds for granting a new trial unless the error or defect affects the substantial rights of the parties." *Stewart v. S. Kan. and Okla. RR., Inc.*, 36 F. Supp. 2d 919, 920 (D. Kan. 1999).

**B.      EXCLUSION OF MS. MIRACLE'S DEMONSTRATIVE EXHIBIT**

Defendant argues that it is entitled to a new trial because the Court excluded "Defendant's technical expert, Nancy Miracle's demonstrative exhibit showing code that LFOW copied from the Internet[.]" (Doc. # 285 at 2.) Plaintiff responds that the demonstrative exhibit was properly excluded because Ms. Miracle's demonstrative purported to compare the LFOW Code to internet code allegedly from 2004 ("2004 Internet Code") where several lines of the internet code could not be date-verified from 2004 and Ms. Miracle altered the 2004 Internet Code and the LFOW Code to make the two sets of code appear similar. (Doc. # 298 at 10–11.) Defendant replied that the Jury was entitled to consider Ms. Miracle's demonstrative as evidence because a side-by-side comparison "must be made between the original and a copy to determine whether a layman would view the two works as substantially similar" and that any alterations made to either code was harmless because the alterations were made merely to improve

readability of the codes. (Doc. # 314 at 5–6 (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994)).) Additionally, Defendant asserts that the fact that the Jury asked one question about Ms. Miracle's demonstrative during deliberation evinces that Defendant was prejudiced by the Jury's inability to consider Ms. Miracle's demonstrative exhibit. (*Id.* at 6.) For the following reasons, the Court disagrees with Defendant.

This Court, generally, does not admit expert reports or portions of those reports into evidence due to the fact that they are rife with hearsay. The Court admitted Dr. Goldberg's demonstrative exhibit only because it contained side-by-side comparisons of already admitted photograph-exhibits of the LFOW and Integrity codes and the Court found such comparisons would be helpful to the jury. (Doc. # 245 at 30–34.) In contrast, the demonstrative exhibits Defendant sought to admit from Ms. Miracle's report did not reflect accurately any exhibits which had been admitted into evidence. The modifications Ms. Miracle made to the actual codes caused the depictions to be inaccurate depictions of each code as it existed in 2004,[3] and such inaccuracy would have served only to mislead and confuse the jury.[4] Although the Court did not admit the demonstrative into

---

[3] For example, the 2004 Internet Code contained two lines of code from a date that could not be confirmed. The "2004" heading may have left the Jury with the impression that the internet code being compared to the LFOW Code was **entirely** from 2004 when, in fact, two lines of that code might have originated from a date subsequent to when the LFOW Code was created. (Doc. # 269 at 63–64.) Moreover, Ms. Miracle's alteration of the formatting of both codes, regardless of the reason, had the effect of making the codes look **more** similar, in ways that would have misled the jury because the comparison was not a "side-by-side comparison" between the actual 2004 Internet Code and the LFOW Code.

[4] The Defendant's representation of the bench conference regarding this matter lacks completeness. (Doc. # 314 at 8 n.2.) Defendant states that it withdrew its objection to the admission of one of Dr. Goldberg's demonstrative exhibits "provided that it would have the same opportunity to admit Ms. Miracle's slides" and that Plaintiff "raised no objections[.]" (*Id.*) At the

evidence, the Court did permit Ms. Miracle to testify extensively as to her demonstrative exhibits, because her testimony was subject to cross examination.

Accordingly, the Court is unconvinced that its exercise of discretion in excluding Ms. Miracle's demonstratives from evidence was clearly erroneous or entitles Defendant to a new trial.[5]

## C.    EXCLUSION OF EVIDENCE RELATED TO PATENT APPLICATION

Defendant argues that the Court erroneously excluded Plaintiff's prior patent application on relevancy grounds because it "was relevant to [Defendant's] affirmative defense of copyright misuse." (Doc. # 285 at 2.) Further, Defendant asserts that it is entitled to a new trial because the Court "refused to instruct the jury on copyright misuse despite evidence presented in the trial that supported" that defense. (*Id.*) Because Plaintiff previously applied for a patent regarding a "method for presenting on an end-

---

bench conference that occurred at the conclusion of Dr. Goldberg's testimony, the Court admitted a demonstrative exhibit from Dr. Goldberg's expert report because it would be helpful to the jury and it was comprised of two images that were already admitted as evidence. (Doc. # 245 at 31–34.) The Court and Plaintiff agreed only that Defendant would have an opportunity to attempt to admit Ms. Miracle's demonstrative exhibits as evidence if the circumstances permitted. (*Id.* at 34.)

[5] Because the Court finds that its decision to exclude Ms. Miracle's demonstrative exhibits as evidence was not clearly erroneous, the Court also finds that such exclusion did not prejudice Defendant regardless of the Jury's question about those demonstrative exhibits. The Court is unpersuaded by Defendant's argument that the Jury Note constituted "proof" that Defendant was prejudiced by the Court's exclusion of the demonstratives. That the Jury requested clarification as to whether demonstratives had been admitted does not force the Court's hand to provide the Jury with demonstratives that had not been properly admitted under the Federal Rules of Evidence. Defendant fails to cite precedent stating otherwise. The Court also notes that Defendant's representation that the Court refused "to provide [the demonstratives] to the jury with no justification" is disingenuous. (Doc. # 314 at 6.) Although Defendant may disagree with the Court's justification, Defendant's contention is contradicted by the Court's response to the Jury which provided: "You have all the exhibits the Court has admitted." (Doc. # 212.) The Court declined to provide Ms. Miracle's demonstratives to the Jury because they were not admitted into evidence.

user computer a video obtained from video data[,]" Defendant postulates that Plaintiff committed copyright misuse and "illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws" as method of operations are not copyrightable pursuant to 17 U.S.C. § 102(b). (*Id.* at 7.)

Plaintiff responds that Defendant "offered no evidence of competition, market power or other proof that would relate to a defense sounding in antitrust, upon which copyright misuse is founded" and that Defendant fails to cite any case law providing that copyright misuse "could be found based on an abandoned patent application." (Doc. # 298 at 4.) Moreover, Plaintiff contends that the Court's ruling was not legally erroneous because Defendant's argument pertained to the merger doctrine as opposed to copyright misuse, and the Court instructed the jury on that doctrine. (*Id.* at 5 (citing Doc. # 211 at 13).) Thus, according to Plaintiff, neither excluding the patent application nor instructing the jury on copyright misuse was clearly erroneous and prejudicial to Defendant.

Defendant replied and suggests that when the Court excluded the patent application and refused to instruct the jury on the affirmative defense of copyright misuse, Defendant's right to a fair trial was compromised because Defendant could not cross-examine Plaintiff as to similarities between the "functionality" of the LFOW Code and the alleged "client configurable video delivery platform" described in Plaintiff's patent application. (Doc. # 314 at 2.) Defendant reprises that "the idea for a virtual greeter is not copyrightable since copyright does not protect ideas." (*Id.*)[6]

---

[6] The Court observes that, in Defendant's Reply, Defendant avers that Plaintiff's arguments focus "entirely on unrelated issues concerning **monopolies** and antitrust violations [], issues which were never raised by [Defendant]." Yet Defendant contends that Plaintiff's "patent

"The copyright misuse doctrine is an equitable defense to a copyright infringement action that forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the copyright office and is contrary to public policy to grant." *Malibu Media, LLC v. Miller*, Case No. 13-cv-02691-WYD-MEH, 2014 WL 2619558, at *4 (D. Colo. June 12, 2014) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999)). When analyzing the affirmative defense of copyright misuse, courts tend to focus on whether Plaintiff attempted to secure or extend a purported monopoly. *See Home Design Servs, Inc. v. B&B Custom Homes, LLC*, Case No. 06-cv-00249-WYD-GJR, 2008 WL 2302662, at *3–4 (D. Colo. May 30, 2008).

The Court is unmoved by Defendant's arguments. Defendant aims its argument at whether the LFOW Code is copyrightable—not whether Plaintiff attempted to secure a monopoly beyond the scope of the copyright. (*Id.* at 5.) To the extent that Defendant is arguing that Plaintiff violated the public policies underlying copyright law because the LFOW Code was uncopyrightable, the Court is satisfied that a separate instruction for copyright misuse was unnecessary. Indeed, Defendant's concerns were addressed in Instruction No. 12, a thorough definition of what type of works are copyrightable that includes discussion of the merger doctrine. (Doc. # 211 at 13–14.)

Moreover, the Court agrees with Plaintiff that Defendant proffered no evidence of Plaintiff's attempt to secure an exclusive right or limited monopoly. Additionally, the Court

---

application was highly relevant to whether it sought to extend its copyright **monopoly** in violation of" the public policies that support copyright protection. (Doc. # 314 at 4 (emphasis added).) Thus, in addition to the reasons stated herein, the Court finds that Plaintiff's arguments concerning monopolies and Defendant's lack of evidence thereof are relevant to deciding whether Defendant is entitled to a new trial.

has found no binding authority, and Defendant cites none, providing that an abandoned patent application renders a copyright over a related item unenforceable or against the public policy underlying copyright law. That Defendant wanted a second chance to argue copyrightability before the jury does not warrant a new trial. Nor does it make the patent application relevant to any proposed copyright misuse defense.[7] Accordingly, Defendant has failed to meet its burden to show that the Court's evidentiary ruling was clearly erroneous.

## D.   ADMISSION OF INTERNET ARCHIVE PRINTOUTS

Next, Defendant asserts that the Court erroneously admitted internet archive printouts ("Archive Webpage Printouts") related to Defendant's website because such printouts were "un-authenticated" under Federal Rule of Evidence 901(a). (Doc. # 285 at 5.) According to Defendant, expert witness Dr. Goldberg's testimony allegedly showed that the admitted Archive Webpage Printouts reflected modifications that were not present on the date that the webpage existed. (*Id.* at 6.) Because the Archive Webpage Printouts were allegedly the "only direct evidence of the existence of the LFOW source code" on Defendant's website, Defendant contends that the improper admission of such printouts prejudiced its right to a fair trial. (*Id.* at 5–7.) Specifically, Defendant argues that

---

[7] The Court notes that prior to striking the instruction on copyright misuse for lack of sufficient of evidence, Defendant did not object to the Court's proposed jury instruction regarding copyright misuse. That instruction provided that the "copyright misuse doctrine forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Act" and that to "establish its affirmative defense of copyright misuse, Defendant must prove by a preponderance of the evidence that Plaintiff illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." (Doc. # 285 at 7.) Defendant offered insufficient evidence of both to warrant inclusion of a copyright misuse instruction.

the improper admission of the Archive Webpage Printouts "subjected it to damages for infringement from January of 2011 through February of 2015." (*Id.* at 7.)

Plaintiff retorts that the Archive Webpage Printouts were properly admitted and authenticated by Mr. Shcherbakov's testimony and "circumstantial indicia of authenticity." (Doc. # 298 at 9.) Moreover, Plaintiff contends that any modifications to the Archive Webpage Printouts were "predictable and consistent with the functionality of the Internet Archive, as was explained by Dr. Goldberg." (*Id.* at 8.) Because Dr. Goldberg compared the Archive Webpage Printouts from 2011 to his own printouts from 2015, which were admitted and unchallenged by Defendant, Plaintiff argues that the Archive Webpage Printouts were sufficiently authenticated under Rule 901. (*Id.* at 8–9.)

Defendant replied and argues that Dr. Goldberg concluded that Archive Webpage Printouts were not reliable. (Doc. # 314 at 3–4.) Moreover, Defendant asserts that Plaintiff's failure to examine 10 Pound Gorilla or obtain authentication certificates from Archive were fatal to authenticating such documents. (*Id.* at 4.)

Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides examples of "evidence that satisfies the requirement[,]" including:

> **(1) Testimony of a Witness with Knowledge.** Testimony that an item is what it is claimed to be.
>
> **(3) Comparison by an Expert Witness or the Trier of Fact.** A comparison with an authenticated specimen by an expert witness or the trier of fact.
>
> **(4) Distinctive Characteristics and the Like.** The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item,

taken together with all the circumstances.

Fed. R. Evid. 901(b)(1), (3), (4).

To evaluate an exhibit's authenticity, courts "ask 'whether there is a reasonable probability that the evidence has not been altered in any **material** aspect since the time of the crime and that it reasonably has a tendency to establish facts of consequence in the action as more probable than they would be without the evidence.'" *United States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019) (quoting *United States v. Brewer*, 630 F.2d 795, 802 (10th Cir. 1980)) (emphasis added). "Although Rule 901 serves an important gatekeeping function, '[t]he bar for authentication of evidence is not particularly high.'" *Id.* (quoting *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007)).

"Courts evaluate the authenticity of websites based on the purpose for which the website is being offered." *Id.* "Circumstantial indicia of authenticity," including distinctive characteristics such as presence of the date and identifying web address, in addition to a witness's declaration or testimony may support a reasonable juror in the belief that webpages are what the witnesses say they are. *Firehouse Restaurant Grp, Inc. v. Scurmont LLC*, Case No. 4:09-cv-00618-RBH, 2011 WL 3555704, at *4 (D.S.C. Aug. 11, 2011) (citing *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002); *United States v. Standring*, No. 1:04CV730, 2006 WL 689116 (S.D. Ohio 2006)).

Authentication of evidence "merely renders [evidence] admissible, leaving the issue of [its] ultimate reliability to the jury." *Vayner*, 769 F.3d at 131 (quoting *United States v. Tropeano*, 252 F.2d 653, 661 (2d Cir. 2001). After evidence has been authenticated and admitted, opposing parties "'remains free to challenge the reliability of

the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*.'" *Isabella*, 918 F.3d at 844 (quoting *Vayner*, 769 F.3d at 131) (emphasis in original).

The Court finds that its decision to admit the Archive Webpage Printouts was not clearly erroneous. In the absence of binding authority to the contrary, the Court disagrees that the "only way" to authenticate the Archive Webpage Printouts was "[r]equiring that the people from Wayback actually come and testify[]" (Doc. # 247 at 4.) Instead, there was "sufficient indicia of reliability" that the Archive Webpage Printouts were accurate representations of what Defendant's website looked like at the time the website existed. (Doc. # 247 at 20, 25.) Plaintiff's CEO Mr. Shcherbakov testified that he had personal knowledge that the Archive Webpage Printout from 2015 was consistent with his observation of Defendant's webpage on that same date in 2015, and that he "looked at internet archive screen shots from earlier days that were consistent with what he knew to be live." (*Id.* at 20) Indeed, Mr. Shcherbakov explained to the jury that the LFOW Code that existed on the Archive Webpage from 2011 was identical to the LFOW Code that appeared on the 2015 Archive Webpage Printout and webpage he observed. (*Id.* at 19–21, 25.) Moreover, the Archive Webpage Printouts contained distinctive characteristics as they reflected the date that the webpages in question were captured and the identifying information about the website. (Doc. # 247 at 17–19.) Thus, the Court is satisfied that the Archive Webpage Printouts were authenticated by Mr. Shcherbakov's testimony and a sufficient indicia of reliability.

Finally, the Court observes that Defendant failed to proffer evidence indicating that the Archive Webpage Printouts were altered in a material aspect. *Isabella*, 918 F.3d at 843. The only evidence of alterations in the Archive Webpage Printouts' representation of Defendant's website was the addition of time and date stamps in which the website was copied and accessed. Indeed, Dr. Goldberg's testimony confirmed that when the Internet Archive captures a webpage, the only alterations are the "addition of the time and date stamp and [a] tag for links[.]" (Doc. # 300-5 at 13.) Therefore, the Court finds that these alterations are neither material nor compromise the authenticity of the Archive Webpage Printouts.[8]

Accordingly, the Court affirms its decision that the Archive Webpage Printouts were properly admitted, and as such, Defendant is not entitled to a new trial.

**E. REMITTIUR**

1. <u>Legal Standard</u>

In civil cases, it is an axiomatic legal principle that determination of the amount of damages is a fact-finder's function. *Jackson*, 587 F. Supp. 2d at 1198. "The trier of the facts, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured part." *Id.* (citing *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985)). "[I]n

---

[8] The Court notes that Dr. Goldberg's testimony as to the reliability of the Archive Webpages has no place in deciding their authenticity. (Doc. # 314 at 6–7). Indeed, Dr. Goldberg's testimony that the Archive Webpage from January 29, 2011 may not necessarily indicate what was on the website on January 29, 2011 goes "to the *weight*" of the Archive Webpages—"not to [their] *admissibility*." *Isabella*, 918 F.3d at 844 (emphasis in original).

all but the most extreme and unusual circumstances, a jury's award of damages on a duly entered verdict is inviolate." *Id.* (citing *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998). "Where a new trial motion asserts that the jury verdict is not supported by the evidence, 'the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (quoting *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996)) (internal quotations omitted).

Ordinarily, "a trial judge reviews the jury's verdict in order to determine if substantial evidence at trial supported the amount awarded." *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1448 (10th Cir. 1987). "If the court finds that insufficient evidence exists, or finds the amount of the verdict a product of jury passion or prejudice, the court then may determine a reasonable amount as plaintiff's damages and allow plaintiff to remit the excess over such amount." *Id.* (citing *Malandris*, 703 F.2d at 1168). "Remittitur is indicated only when 'the jury award is so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial.'" *Jackson*, 587 F. Supp. 2d at 1198 (quoting *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1021 (10th Cir. 2006)). A party moving for remittitur bears a heavy burden to prove that such action is warranted. *Wood*, 438 F.3d at 1021. When determining whether remittitur is proper, courts must "consider the totality of the circumstance." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416–17 (10th Cir. 1997)). "[T]he amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it." *Bennett*, 774 F.2d at 1028. Even though a

plaintiff's testimony or evidence is not "exceedingly graphic or detailed," evidence as a whole may still be sufficient to support a jury verdict on damages. *Jackson*, 587 F. Supp. 2d at 1199 (quoting *Smith*, 129 F.3d at 1416).

        2.      <u>Whether Remittitur Is Warranted</u>

        Defendant's last argument is that it is entitled to a new trial because the evidence does not support the Jury's verdict regarding damages. (Doc. # 285 at 10–13.) Specifically, Defendant avers that Plaintiff failed to prove damages based on Defendant's "actual use of the LFOW Code." (*Id.*) Defendant suggests that the "jury's verdict of $262,197.00 was not based upon evidence of the actual use of the LFOW software by Integrity" and that Plaintiff "never introduced any evidence that valued Integrity's actual use" as required under the Court's jury instruction. (*Id.* at 12); (Doc. # 211 at 18.) Defendant argues that "actual damages" means "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendant of Plaintiff's work[,]" which cannot include "the highest use for which [P]laintiff might license" the copyrighted work to other licensees based on different uses. (Doc. # 285 at 11.) So Defendant's theory goes—because Plaintiff's proffered evidence included licensing fees earned from Plaintiff's agreements with Veretch, Lexus, and Kelley Blue Book, and their uses of the LFOW Code were allegedly different than Defendant's "actual use" of the LFOW Code, such evidence was an insufficient basis upon which the jury could award damages to Plaintiff. (*Id.* at 12–13.) Defendant contends that its alleged infringing use of the LFOW Code was similar to a use that Plaintiff only charges a one-time cost of $259. (*Id.* at 13.)

Plaintiff responds that the Jury's verdict was not so "clearly, decidedly, or overwhelmingly against the weight of the evidence." (Doc. # 298 at 17.) Plaintiff asserts that it was proper for the jury to award "actual damages" based on Plaintiff's submitted evidence of how much money other licensees pay Plaintiff per month to use the LFOW Code in the same manner that Defendant used the code. (Doc. # 298 at 13.) Because Plaintiff showed that Defendant used the LFOW Code on multiple URLs and with Plaintiff's non-branded player, uses only available for monthly licenses, Plaintiff argues that its damages expert Mr. Bratic's testimony as to the amount that Defendant would have paid on a monthly basis to use the LFOW Code during the infringing time period was sufficient to establish its damages. (*Id.* at 3, 14.) Moreover, Plaintiff asserts that the Jury was "presented with data showing years-worth of payments pursuant to the terms of the licenses, along with expert opinions that the use of the software by Integrity was consistent with the minimum license payment reflected by the licenses" and that the Jury's award of damages fell "within the range of licenses calculated" by Plaintiff's damages expert and that paid by actual licensees." (*Id.* at 16.)

In its Reply brief, Defendant reprises its argument that Plaintiff only provided evidence of damages related to **different** uses of the LFOW Code than those utilized by Defendant. (Doc. # 314 at 9.) Defendant argues that such evidence of what other licensees paid to use the LFOW Code is irrelevant to how Defendant actually used the LFOW Code based on the different "services" available to the other licensees, and, thus, cannot support the Jury's verdict. (*Id.* at 6–7.)

The Court finds that Defendant has failed to meet its heavy burden of establishing

that the Jury's damages award was so excessive that it shocked the "judicial conscience" and "raised an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial.'" *Jackson*, 587 F. Supp. 2d at 1198. The Court instructed the Jury regarding "actual damages" as follows:

> "Actual Damages" means the amount of money adequate to compensate Plaintiff for the reduction of the fair market value of the copyrighted work caused by Defendant's infringement. The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by Defendant of Plaintiff's work. That amount may be represented by the lost license fees Plaintiff would have received for Defendant's unauthorized use of Plaintiff's work.

(Doc. # 211 at 18.) It is apodictic that a jury determines damages. *Jackson*, 587 F. Supp. 2d at 1109; *Bennett*, 774 F.2d at 1028. Indeed, "in all but the most extreme and unusual circumstances," this Court should not second-guess the Jury's damages award. *Jackson*, 587 F. Supp. 2d at 1109.

The instant action presents anything but the most extreme or unusual circumstances. The Court is satisfied that Plaintiff proffered sufficient evidence upon which the Jury could award damages for Defendant's actual use of the LFOW Code.

First, the Jury was presented with evidence of Defendant's use of the LFOW Code and the use of other licensees who paid monthly licensing fees for similar use of the LFOW Code. (Doc. # 301-1 at 31–35.) LFOW CEO Mr. Shcherbakov also testified that Defendant's utilization of the LFOW Code on multiple URLs and with a non-branded video player is consistent with uses that warrant a monthly licensing fee that Plaintiff would have charged, and has charged, to other licensees. (Doc. # 301-2 at 16–21.) Defendant had the opportunity to, and did, cross examine Plaintiff's witnesses regarding

Defendant's use of the LFOW Code and whether it resembled uses reserved for single-pay or monthly licenses. (Doc. # 301-2 at 16–21). In the absence of binding legal authority to the contrary, it was within the Jury's province to weigh that evidence, including the credibility of the witnesses, and determine an amount of actual damages that reflected Defendant's use of the LFOW Code. As such, Defendant's arguments are unavailing and do not warrant judicial interference with the Jury's decision to award damages.

In addition to Mr. Shcherbakov's testimony regarding the amount that LFOW earns in monthly licensing fees with other licensees, Plaintiff's damages expert Mr. Bratic testified to the substance of monthly licensing agreements for use of the LFOW Code, the costs of these licensing fees, and how such costs vary depending on various terms of licensing agreements. (Doc. # 301-3, at 3–10); (Doc. # 301-1 at 31–35.) According to Mr. Bratic's analysis, Plaintiff was entitled to $299,515 in lost licensing fees, which was about $30,000 more that the Jury awarded. (Doc. # 254 at 14–16, 29.) The Court finds that this evidence was a sufficient basis to support the Jury's verdict regarding Plaintiff's actual damages based on Defendant's actual use of the LFOW Code.

Accordingly, Defendant's Motion Under Fed. R. Civ. P. 59 for a New Trial or for Remittitur (Doc. # 285) is DENIED.

## IV.     DEFENDANT'S MOTION FOR PROTECTIVE ORDER

In its Motion for Protective Order (Doc. # 295), Defendant argues that the Court should exercise its discretion under Rule 26(c) and stay judgment-related discovery pending resolution of Defendant's post-trial motions and Defendant's Renewed Motion

to Stay Execution of Judgment (Doc. # 272). (Doc. # 295 at 1–2.) Because the Court denied Defendant's Second Renewed Motion to Stay Execution of Judgment (Doc. # 308) and, as set forth herein, denies Defendant's Post-Trial Motions (Doc. ## 284, 285), the Court finds that good cause does not exist for entering a protective order that bars post-judgment discovery.

Accordingly, Defendant's Motion for Protective Order (Doc. # 295) is DENIED.

## V. <u>PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST</u>

Next, the Court addresses Plaintiff's Motion for Prejudgment Interest (Doc. # 222), wherein Plaintiff seeks an award of prejudgment interest on the jury's award of actual damages in the amount of $262,197 and provides the Court with two calculations of prejudgment interest—(1) rate at 8 percent per annum, the Colorado statutory rate (Doc. ## 222 at 2, 222-1 at 3, ¶¶ 6–7, 5) and (2) "prime rate, i.e., the U.S. prime rate for borrowing" compounded annually (Doc. ## 222 at 3, 222-1 at 3–4, ¶¶ 8–9, 6). Plaintiff requests that the Court award prejudgment interest based on either one of these calculations. (Doc. # 222 at 3.)

Defendant vehemently opposes the calculation of prejudgment interest based on the Colorado statutory rate. (Doc. # 292 at 4–5.) Defendant does not address whether prejudgment interest based on the U.S. prime rate is acceptable. However, Defendant argues that Mr. Bratic's affidavit regarding calculations of prejudgment interest is flawed as a result of calculating prejudgment interest on an infringing time period that starts in August 2010 as opposed to August 2011. (*Id.* at 4–5.) Finally, Defendant asserts that this Court should decline to rule on Plaintiff's motion for prejudgment interest until post-trial

motions and any forthcoming appeals are resolved. (*Id.* at 7–8.)

Plaintiff replied and represents that the infringing time period for Mr. Bratic's calculation of prejudgment interest was correct. (Doc. # 306 at 2.) Although Mr. Bratic's calculations of damages involved a sixty-six (66) month period based on the Internet Archives evidence, he calculated prejudgment interest based on an infringing period of seventy-one (71) months based on Mr. Kirschbaum's testimony that Defendant installed the infringing software on August 25, 2010. (Doc. # 306 at 2, 2 n.2)

The Court has discretion to award prejudgment interest to Plaintiff on its copyright infringement claim. *Kleir Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1041–42 (10th Cir. 1990) ("prejudgment interest is available to plaintiffs under the Copyright Act" and "is ordinarily awarded, absent some justification for withholding it"). Under federal law, an award of prejudgment interest is governed by a two-step analysis: (1) the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party; and (2) when the award would serve a compensatory function, the court must determine whether the equities would preclude the award of prejudgment interest. *Id.* at 1042 n.4 (citing *Touche Ross*, 854 F.2d at 1257). Because there is no federal statutory interest rate for prejudgment interest, trial courts have discretion[9] to choose which rate to impose. *Id.* In copyright actions, many courts have imposed the prime rate when awarding prejudgment interest. *Adept Computer Sols., Inc. v. Zoll Data Sys., Inc.*, Case No. 05-cv-01917-RPM, 2008 WL 410581, at *1 (D. Colo.

---

[9] The Court rejects Defendant's unsupported assertion that the Court is required to apply the rate set forth in 28 U.S.C. § 1961. (Doc. # 292 at 5.)

Feb. 14, 2008); *In re Ind. Serv. Orgs. Antitrust Litig.*, 23 F. Supp. 2d 1242, 1250 (D. Kan. 1998).

With respect to the first step, the Court finds that "[p]rejudgment interest is necessary to achieve the goal of compensating copyright owners under the Copyright Act." *Kleier*, 921 F.2d at 1042. "Prejudgment interest is an element of complete compensation" because it "compensate[s] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving fully compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). In the instant action, the Jury awarded $262,197.00 in actual damages which represented the lost license fees that Plaintiff would have received for Defendant's unauthorized use of the LFOW Code. Thus, the Court finds prejudgment interest is appropriate and necessary to compensate Plaintiff for its unpaid license fees. *See In re Ind. Serv. Orgs. Antitrust Litig.*, 23 F. Supp. 2d at 1250.

Regarding the second step, the Court finds that neither the equities nor the circumstances of the present case warrant withholding prejudgment interest. Indeed, the Jury awarded damages for **years** of Plaintiff's lost licensing fees as a result of Defendant's infringement. In its discretion, given the length of infringement, the Court finds no reason to refuse an award of prejudgment interest.

Plaintiff submitted two calculations of prejudgment interest—the Colorado interest rate and the prime rate. Having reviewed both calculations, and in line with another court

in this District,[10] the Court finds in its discretion that the prime rate calculation is reasonable[11] and should be adopted.

Accordingly, the Court awards Plaintiff prejudgment interest on the copyright infringement damages award in the amount of $54,499.00, beginning on August 25, 2010 and ending on the date of judgment—October 5, 2018.

## VI. PLAINTIFF'S MOTION FOR FEES AND FULL COSTS

The final post-trial motion for the Court's consideration is Plaintiff's Motion for Fees and Costs (Doc. # 225). Plaintiff asserts that the Court should exercise its discretion under 17 U.S.C. § 505 and award Plaintiff its attorney fees and costs because (1) several of Defendant's positions and defenses were objectively unreasonable (*id.* at 3–10), (2) Defendant committed several instances of litigation misconduct (*id.* at 10–14), and (3) compensation for Plaintiff's attorney fees and full costs serves to deter other infringers (*id.* at 14.) With respect to its full costs, Plaintiff requests that the Court award its costs that were not recoverable under 28 U.S.C. § 1920, such as expert fees, travel fees, and out-of-pocket expenses. (*Id.* at 14–16.)

---

[10] The Court observes that Judge Matsch awarded prejudgment interest on plaintiff's copyright infringement claim and found it reasonable to do so based on the prime rate. *Adept Computer Sols., Inc.*, 2008 WL 410581 at *1.

[11] The Court rejects Defendant's contention that, if at all, the Court should calculate prejudgment interest with a start date of January 2011. (Doc. # 292 at 4.) Instead, the Court agrees with Plaintiff that the Jury heard sufficient evidence upon which to conclude that Defendant's infringing conduct began on August 25, 2010. (Doc. # 306 at 2); *see Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1147 (D. Kan. 2010) ("When prejudgment interest should commence is a matter to be determined by the trial court in the exercise of sound discretion, upon consideration of all the attendant facts and equities."). Indeed, Mr. Kirschbaum's testimony and record evidence indicated that Defendant installed the infringing software on August 25, 2010. (Doc. # 250 at 19–21, 44–45.)

Defendant responded to the Motion and requests that the Court stay any decision regarding the instant Motion pending resolution of Defendant's post-trial motions and any and all appeals to the United States Court of Appeals for the Tenth Circuit. (Doc. # 291 at 5–6.) Alternatively, Defendant argues that its defenses and litigation of the case were objectively reasonable by reprising the same arguments it has made throughout its Motion for New Trial and Renewed Motion for Judgment as a Matter of Law. (*Id.* at 7–14.) Defendant also argued that its litigation conduct was proper and does not warrant an award of attorney fees and costs against it. (*Id.* at 6–7.) Finally, Defendant asserts that a fee award would not advance the interests of the Copyright Act and, instead, would improperly deter parties like Defendant from vindicating their rights and advancing "meritorious defenses." (*Id.* at 17.)

For the following reasons, the Court finds that an award of attorney fees and full costs for Plaintiff is warranted under a totality of the circumstances.

## A.    LEGAL STANDARD

The Copyright Act provides that "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any part other than the United States or an officer thereof" and "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In *Kirtsaeng v. John Wiley & Sons, Inc.*, the United States Supreme Court recently set forth additional guidelines for district courts to consider when ruling on motion for attorney fees and costs under the Copyright Act. 136 S. Ct. 1979, 1986–88 (2016). Prior to *Kirstaeng*, the Supreme Court articulated two restrictions that provided (1) "a district court may not

'award[] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment[;]" and (2) "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." 136 S. Ct. at 1985 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527, 533 (1994)).

The *Kirstaeng* Court developed some additional restrictions to guide district courts. First, district courts should place substantial weight on objective reasonableness by assessing whether the losing party advanced an objectively unreasonable claim or defense. *Id.* at 1988. This assessment is "closely related to what the court has already done: [i]n deciding any case, a judge cannot help but consider the strength and weakness of each side's argument." *Id.* at 1987. By placing substantial weight to this factor, the legal system "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Id.* at 1986.

Second, the Court reiterated that "objective reasonableness can be only an important factor in assessing fee applications not the controlling one." *Id.* at 1988. "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals," which may include an order of fee-shifting due to a party's litigation misconduct, "whatever the reasonableness of his claims or defenses." *Id.* at 1988–89. A review of these circumstances may also include consideration of approved "nonexclusive factors" such as "frivolousness, motivation . . . and the need in particular circumstances to

advance considerations of compensation and deterrence." *Id.* at 1985. These non-exclusive factors align with the Tenth Circuit's consideration of whether attorney fees are warranted under the Copyright Act. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1200 (10th Cir. 2005).

## B.    PLAINTIFF IS THE PREVAILING PARTY

As a preliminary matter, the Court notes that Plaintiff is the prevailing party under the Copyright Act. 17 U.S.C. § 505. To be considered a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (internal quotations omitted). "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay," and comprises a change in the legal relationship between the parties. *Id.* at 113. In the instant case, Plaintiff is the prevailing party because the jury found that Defendant infringed Plaintiff's copyright over the LFOW Code and awarded Plaintiff $262,197.00 in actual damages. (Doc. ## 215, 216.)

## C.    WHETHER PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND FULL COSTS

### 1.    Objective Reasonableness of Defendant's Positions

The Court considers the objective reasonableness of the losing party's position "both in the factual and in the legal components of the case." *Kirtsaeng*, 136 S. Ct. at 1988. "When a litigant . . . is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the

way to the end. The holder of the copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small." *Id.* at 1985. In meeting the objective unreasonableness inquiry, the Court should "consider the strength and weakness of each side's argument." *Id.* at 1987. The Court agrees with Plaintiff that Defendant advanced several objectively unreasonable positions throughout the litigation (Doc. # 225 at 3–14) and will address the key objectively unreasonable positions that warrant an award of attorney fees for Plaintiff.

One objectively unreasonable position that Defendant advanced throughout the litigation and post-trial briefing was that Plaintiff must prove "volitional conduct" to support its direct infringement claim. Defendant cited to the same line of cases allegedly supporting this proposition throughout its summary judgment briefing (Doc. # 137 at 17–18), trial brief on jury instructions (Doc. # 195 at 1–2), Rule 50(a) Motion (Doc. # 329 at 3–5), Renewed Rule 50(b) Motion (Doc. # 284 at 4–5), and in opposition to Plaintiff's instant motion for attorney fees and full costs (Doc. # 291 at 13–14.) However, for the same reasons discussed in the Court's analysis of Defendant's Renewed 50(b) Motion, the Court is unconvinced that Defendant's argument is applicable to the instant action.

Upon review of the cases cited by Defendant, the Court concludes that those cases generally hold that the element of volitional conduct is important, and perhaps, necessary when copyright holders seek to hold online or cable service providers liable for direct infringement based on conduct committed by users or customers. *See Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2017); *Tomelleri v.*

*Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 8375083, at *19 (D. Kan. Dec. 9, 2015)).) The facts of the instant case are inapposite to this line of cases. Indeed, Plaintiff's theory of direct infringement liability is straightforward. Plaintiff alleged and submitted evidence supporting that Defendant infringed Plaintiff's copyrighted LFOW Code when it hired a third party to install the infringing software on its website. Plaintiff's direct infringement claim never turned on whether Defendant was liable for the infringing conduct of users or customers who visited Defendant's website. Therefore, the Court finds that Defendant's "volitional conduct" argument was objectively unreasonable in that it had no basis in law or fact.

Second, Defendant litigated this case for more than a year-and-a-half without a good faith basis for asserting eight of nineteen affirmative defenses. Defendant pleaded nineteen affirmative defenses in its Answer to Plaintiff's Complaint. (Doc. # 10 at 8–9.) On January 16, 2019, Plaintiff moved for summary judgment against the following affirmative defenses: (1) innocent/good faith infringer; (2) statute of limitations; (3) laches; (4) res judicata; (5) collateral estoppel; (6) equitable estoppel; (7) copyright misuse; (8) failure to join indispensable party; (9) doctrine of exhaustion/first sale defense; and (10) (fair use) (Doc. # 114 at 15– 22.) In response to Plaintiff's Motion for Summary Judgment (Doc. # 137), Defendant conceded that it could not maintain eight of the nineteen affirmative defenses. (*Id.* at 23.) After Plaintiff incurred the expenses of extensively briefing issues related to Defendant's asserted defenses, Defendant's response evinced that it had no intention to support or pursue almost half of its affirmative defenses. Accordingly, the Court concludes that Defendant's position with

respect to the assertion of affirmative defenses were objectively unreasonable.

Third, the Court finds that Defendant's copyright misuse defense was objectively unreasonable throughout the litigation and post-trial briefing. As demonstrated in its summary judgment briefing, Defendant contended that its copyright misuse defense purported to bar Plaintiff "from prevailing on an action for the infringement of the misused copyright" where Plaintiff seeks to "extend monopoly power to property not covered by the copyright." (Doc. # 137 at 21 (citing *DSC Comms. Corp. v. DGI Techs., Inc.*, 81 F.3d 597 (5th Cir. 1996)); (Doc. # 122 at 21–22.) Moreover, in its Trial Brief regarding Jury Instructions, Defendant proposed a non-stipulated jury instruction on copyright misuse requiring Defendant to establish that Plaintiff's copyright had an "anticompetitive effect" or impermissible monopoly effect and that Plaintiff "violated the antitrust laws" or "illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws." (Doc. # 195 at 10–11 (citing *Indep. Serv. Orgs.*, 964 F. Supp. 1464, 1477 (D. Kan. 1997)).) Prior to dismissing Defendant's copyright misuse defense (Doc. # 209), the Court proposed a copyright misuse instruction that reflected Defendant's burden of proof in accordance with two District of Colorado opinions. *See Malibu Media, LLC v. Miller*, No. 13-cv-02691, 2014 WL 2619558, *4 (D. Colo. June 12, 2014); *Home Design Serv., Inc. v. B & B Custom Homes, LLC*, No. 06-cv-00249, 2008 WL 2302662, *2 (D. Colo. May 30, 2008) (quoting *In re Indep. Serv. Orgs. Antitrust Litigation*, 85 F. Supp. 2d 1130, 1175 (D. Kan. 2000)). The Court's proposed instruction too provided that the copyright misuse defense forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by

the Copyright Act.

In the instant case, Defendant's copyright misuse defense lacked any basis in fact. Defendant failed to produce any evidence providing that Plaintiff attempted or sought to use its copyright over the LFOW Code to further a monopoly or gain an anticompetitive benefit. Rather, Defendant continuously conflated its copyright misuse defense with the issue of the merger-doctrine and whether the LFOW Code was copyrightable in the first place. The Court eventually dismissed Defendant's copyright misuse defense as a result of Defendant's inability to produce any evidence regarding the same (Doc. # 209.) Despite that Defendant's copyright misuse defense lacked any basis in fact, Defendant continues to peddle this theory throughout its post-trial briefing. (Doc. ## 291 at 13–15, 285 at 2, 7.) Therefore, the Court finds Defendant's position on the copyright misuse defense to be objectively unreasonable.

The Court finds that Defendant took objectively unreasonable positions and defenses throughout the litigation. Thus, this weighs in favor of an award of attorney fees and full costs for Plaintiff.

2.    Litigation Conduct

The *Kirtsaeng* Court also indicated that a party's litigation misconduct can provide a basis for an award of attorney fees and full costs "even though the losing party offered reasonable arguments." 136 S. Ct. at 1988–99 (citing *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001)). The Court finds that Defendant's litigation misconduct also supports an award of attorney fees and full costs against Defendant.

First, Defendant's intentional violation of the Court's July 28, 2017 Protective

Order (Doc. # 77) caused unnecessary briefing and multiple hearings that eventually culminated in a Court award of sanctions imposed against Defendant. (Doc. # 191.) On July 24, 2017, the parties filed a Joint Motion for Protective Order (Doc. # 73), which was granted and entered on July 28, 2017 (Doc. # 77.) The Protective Order provided that the parties could designate certain documents as "confidential" or "attorney eyes only." (*Id.* at 2.) If a document was designated with an "attorney eyes only" brand ("AEO Documents"), such documents could be disclosed only to certain individuals, including "outside counsel of record or plaintiffs and outside counsel of record for defendants **in this action**[.]" (*Id.* at 5 (emphasis added).) In September 2017, Plaintiff suspected that Defendant was distributing AEO Documents to outside counsel defending litigation against Plaintiff in different actions. (Doc. # 124 at 1–2.) Plaintiff promptly contacted Defense counsel regarding possible violations of the Protective Order, which triggered almost a year's worth of side-litigation on this issue. (*Id.*)

For a year, Defendant denied any violations of the Protective Order to Plaintiff and Magistrate Judge Varholak. (Doc. # 225 at 13; Doc. # 251 at 2–3.) However, on November 21, 2017, Defendant filed a Motion for Partial Relief from the Protective Order (Doc. # 103) and sought permission to disclose confidential and AEO Documents with counsel from other LFOW cases and to use discovery obtained in the other LFOW cases in the instant action. (*Id.* at 4–6.) While that motion was pending before Magistrate Judge Varholak, Defendant's counsel divulged AEO documents to counsel in other LFOW cases in violation of the Protective Order. (Doc. ## 225 at 13, 251 at 2–3.) Upon learning of such violations, Plaintiff's counsel filed a Motion for Sanctions on

January 23, 2018 (Doc. # 124.) The parties' competing motions (Doc ## 124, 103) spurred substantial briefing and multiple hearings regarding compliance with the Protective Order. (Doc. ## 109 (discovery hearing on January 9, 2018); 136 (discovery hearing on February 28, 2018); 158 (telephonic discovery hearing on April 5, 2018); 181 (motion hearing on September 7, 2018); 191 (motion hearing on September 20, 2018).) Defendant's intentional violation of the Protective Order culminated in Magistrate Judge Varholak's order granting Plaintiff's Motion for Sanctions and awarding Plaintiff with its related attorney fees. (Doc. # 191.)

Despite almost a year of denying any violations of the Protective Order, Defendant admitted to violating the Protective Order in its filed Objection to the Magistrate Judge's sanction ruling (Doc. # 220.) However, Defendant's Objection to the Magistrate Judge's ruling evinces Defendant's adherence to the adage of acting first and asking for forgiveness later. Although Defendant admits to violating the Protective Order and paying the sanctions, Defendant argues that this Court should vacate Magistrate Judge Varholak's sanctions ruling because, although Defendant agreed to the provision, it contends that the Protective Order "violate[] the public policies underlying the Federal Rules of Civil Procedure[.]" (*Id.* at 6.)

Upon review of the record pertinent to Defendant's violation of the Protective Order, the Court finds that Defendant's litigation misconduct warrants a full award of attorney fees[12] and costs to be imposed against Defendant. Indeed, Defendant's

---

[12] The Court recognizes that Defendant has already paid Plaintiff's incurred attorney fees related to its Motion for Sanctions (Doc. # 124) briefing and hearing. Therefore, when Plaintiff submits its requests for attorney fees and full costs, it should exclude any attorney fees that

litigation misconduct persisted for almost a year. Defendant's violation of the Protective Order and failure to be forthcoming about those violations spurred unnecessary briefing and discovery conferences causing Plaintiff to incur additional fees while trying to litigate its meritorious claim. Moreover, the issue of whether Defendant violated the Protective Order and the ensuing consequences developed side-show litigation that was immaterial to the claims and defenses in the instant case. The Court's conclusion is buttressed by the fact that Defendant eventually admitted to its misconduct, but then sought dispensation from the misconduct by seeking to invalidate provisions of the Protective Order that it originally proposed. Accordingly, the Court is persuaded that this litigation misconduct weighs in favor of awarding attorney fees in favor of Plaintiff.

Moreover, the Court agrees with Plaintiff that Defendant's litigation tactics regarding the Rule 30(b)(6) deposition were improper. (Doc. # 11–12.) Indeed, Defendant's misconduct required Plaintiff to move the Court for two orders requiring Defendant's Rule 30(b)(6) designated witness to be deposed on multiple occasions. (Doc. ## 86, 91.) With respect to the first deposition, Plaintiff served Defendant with Rule 30(b)(6) topics to which Defendant provided no objections. (Doc. # 225 at 11.) At the deposition, Defendant's corporative representative was either inadequately prepared to testify or refused to testify as to topics set forth in the Rule 30(b)(6) Notice. (*Id.*) Plaintiff raised this issue with the Magistrate Judge, and on August 28, 2017, the Magistrate Judge ordered that a second deposition of Defendant's designated

---

Magistrate Judge Varholak awarded and that Defendant has paid related to Plaintiff's Motion for Sanctions.

representative be taken at Defendant's expense. (Doc. ## 86, 225 at 11.)

At the second deposition, Defendant's designated representative was still inadequately prepared to address the Rule 30(b)(6) topics, such as deductions from Integrity's gross revenue numbers. (Doc. # 225 at 11.) Additionally, after the second deposition, Defendant produced supplemental documents in discovery. (*Id.* at 11–12.) However, Defendant declined to permit Plaintiff to reopen the deposition to address the supplemental production of documents, and as a result, Plaintiff was forced to file another motion to compel, which Magistrate Judge Varholak granted. (Doc. # 91.)

Rule 30(b)(6) depositions are typical in corporate litigation. "Rule 30(b)(6) implicitly requires the designated entity representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition." *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *3–4 (D. Colo. Apr. 30, 2009), *aff'd sub nom. In re Michael Wilson & Partners Ltd.*, No. 06-CV-02575-MSK-KMT, 2011 WL 3608037 (D. Colo. Aug. 16, 2011) (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* 2007 WL 1054279, *3 (D. Kan. 2007)). "Inadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Id.* (citing *Starlight Int'l. v. Herlihy,* 186 F.R.D. 626, 639 (D. Kan. 1999); *Payless Shoesource Worldwide, Inc. v. Target Corp.,* 2007 WL 1959194, *1 (D. Kan. 2007)). Corporations "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject

matter." *Id.* at *4 (citing *Payless*, 2007 WL 1959194 at *4).

Based on the Court's review of the record, Defendant's failure to abide by its obligations under Rule 30(b)(6) caused unnecessary delay and expense. Indeed, Defendant should either have adequately prepared its Rule 30(b)(6) designated witness or instructed the witness to not be evasive. Furthermore, given that Defendant produced supplemental documents and a Rule 30(b)(6) witness cannot be examined at trial, Defendant should have permitted Plaintiff to reopen the deposition for the limited purpose of examining Defendant's designated representative about the supplemental production regarding the agreed upon topics. However, Defendant failed to exhibit a good faith effort to comply with Rule 30(b)(6). As such, Defendant's litigation misconduct also wasted judicial resources. Accordingly, the Court is persuaded that Defendant's misconduct throughout the Rule 30(b)(6) process favors an award of attorney fees and full costs in favor of Plaintiff.

      3.    <u>Deterrence & Compensation</u>

"An award of attorney fees serves to 'penalize the losing party, to deter continuing infringement, to make the prevailing party whole, and to encourage the proper prosecution of copyright infringements.'" *Broadcast Music, Inc. v. Cleatz Bar and Grill, LLC*, No. 12-cv-00321-REB-CBS, 2013 WL 753468, at *1 (D. Colo. Feb. 27, 2013) (internal citations omitted). A court may "order fee-shifting . . . to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng*, 136 S. Ct. at 1989.

Furthermore, the Supreme Court recognized that compensating a prevailing party with attorney fees provides an incentive for copyright holders to stand on their rights. *Id.* at 1986. "When a litigant . . . is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end" regardless of whether "the damages at stake are small." *Id.*

An award of attorney fees may deter losing parties from over-aggressively filing or defending "losing claims." *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1042 (9th Cir. 2018). The inverse is also true. With respect to meritorious claims, the Ninth Circuit articulated that "it is difficult to see how pursuing a meritorious infringement claim 'less aggressively' furthers 'the Copyright Act's essential goals." *Id.* (quoting *Kirtsaeng*, 136 S. Ct. at 1989). Thus, awarding attorney fees to compensate prevailing parties also serves as an incentive for copyright holders to aggressively litigate their meritorious claims, which advance the goals of the Copyright Act, including the promotion of "creativity for the public good." *Id.* at 1041.

In the instant case, the Court finds that an award of attorney fees serves both goals of deterrence and compensation. First, given Defendant's unreasonable positions and litigation misconduct, which increased Plaintiff's costs in litigating its meritorious infringement claim, the Court finds that an award of attorney fees and full costs for Plaintiff will deter Defendant and subsequent infringers from "over-aggressively" litigating unreasonable positions or running up the cost of litigation for which they might be responsible for paying.

Moreover, an award of attorney fees and full costs incentivizes Plaintiff and other copyright holders whose copyrights have been infringed to "stand their ground" and "bring and maintain a suit even if the damages at stake are small." *Kirtsaeng*, 136 S. Ct. at 1986. The Court agrees that when copyright holders, such as Plaintiff, are incentivized to aggressively pursue meritorious claims and win, the Copyright Act's goals are fostered, which benefit the general public. *Turchin*, 896 F.3d at 1042. Therefore, the Court finds that the goals of deterrence and compensation weigh in favor of awarding attorney fees and full costs[13] to Plaintiff.

## VII.  CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.      Defendant's Renewed Motion Under Fed. R. Civ. P. 50(b) to Set Aside or Vacate the Judgment (Doc. # 284) is DENIED;

2.      Defendant's Motion Under Fed. R. Civ. P. 59 for a New Trial or for Remittitur (Doc. # 285) is DENIED;

3.      Defendant's Motion for Protective Order (Doc. # 295) is DENIED;

4.      Plaintiff's Motion for Prejudgment Interest (Doc. # 222) is GRANTED. The Court awards Plaintiff prejudgment interest on the copyright infringement damages award in the amount of $54,499.00, beginning on August 25, 2010 and ending on the date of judgment—October 5, 2018; and

---

[13] The Court agrees with the weight of authority that holds that Copyright Act's use of the phrase "full costs" permits a court to award additional costs not recoverable under 28 U.S.C. § 1920, including expert witness fees, costs, and expenses. (Doc. # 225 at 14–15.) However, as a general matter, this Court does not award lodging expenses for local attorneys or meal expenses for any attorney.

5.      Plaintiff's Motion for Fees and Full Costs (Doc. # 225) is GRANTED. On or before November 1, 2019, Plaintiff shall submit its request for reasonable attorney fees and full costs, with supporting documentation.

DATED:  September 30, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge